UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES L. NORTHCUTT and LEWIS SMITH, on Behalf of Themselves and All Others Similarly Situated, ) ) ) ) Plaintiffs, ) ) vs. ) ) GENERAL MOTORS HOURLY-RATE ) EMPLOYEES PENSION PLAN, GENERAL ) MOTORS CORPORATION and GENERAL ) MOTORS LIFE AND DISABILITY ) BENEFIT PROGRAM ) ) ) Defendants. | 1:04-cv-0337-SEB-VSS |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

The facts of this case are not in dispute. What is at issue is the reach and application of the Supreme Court decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) and whether it has rendered unenforceable certain recoupment provisions contained in numerous benefit plans covered by the Employee Retirement Income Security Act (ERISA). The provisions of the plan relevant here appear to allow the plan administrator to reduce or suspend plan benefits in order to recoup benefit payments that become overpayments when a beneficiary receives lump sum retroactive social security benefits. The retroactive social security benefits covering a period of time during which the beneficiary received plan benefits cannot, pursuant to the plan, duplicate benefits the beneficiary received from social security. Both parties have filed motions for summary judgment in this matter. For the reasons explained

below, we hold that the *Great-West* decision does not render such plan provisions unenforceable and Defendants therefore prevail here in this litigation.

## I.     Background

Plaintiffs James Northcutt and Lewis Smith were hourly employees of Defendant General Motors Corporation and participants in the benefit plans incorporated into the GM-UAW National Agreement which had been negotiated between GM and Plaintiffs' union. Those benefit plans are also Defendants in this lawsuit, namely, the General Motors Hourly-Rate Employees Pension Plan ("Pension Plan") and the General Motors Life and Disability Benefits Program ("Disability Program").

Plaintiff Smith's last day of work for GM was April 23, 1990, after which date he began a disability leave of absence. The Disability Plan provides for Sickness and Accident Benefits ("S&A") followed by Extended Disability Benefits ("EDB"). The Disability Plan provides that benefits are to be reduced by any other disability or old age benefits payable to a beneficiary through social security. With regard to social security benefits, the plan specifically provides:

> Any Disability Insurance Benefits or Old-Age Insurance Benefits which are awarded retroactively shall be treated as having been received by the employee during the entire period for which such benefits were payable and any overpayments of Sickness And Accident Benefits shall be calculated accordingly.

A similar provision covered retroactive social security benefits paid for EDB periods. The 1990 Supplemental Agreement Covering Life and Disability Benefits Program (which applies to Smith because his disability began in 1990) provides that overpayments made under any benefit plan incorporated into the GM-UAW National Agreement must be repaid by the employee or:

-2-

> ... the Corporation, on behalf of the applicable benefit plan, shall arrange to recover the amount of such overpayment from any monies then payable, or which may become payable, to the employee in the form of wages or benefits payable under a General Motors benefit plan (excluding the General Motors Hourly-Rate Employee Pension Plan) incorporated under the GM-UAW National Agreement or any Exhibits thereto."

Plaintiff Smith received his full entitlement of 52 weeks of S&A benefits and, beginning on April 23, 1991, he also received EDB. In April 1991, Smith also signed an agreement specifically confirming his knowledge of the provision in the Disability Plan requiring that he repay any overpayments resulting from a retroactive social security award. In fact, under the Plan, Smith was required to file to receive such social security benefits:

> In consideration of the payment of Sickness and Accident or Extended Disability Benefits, not reduced on account of Disability Insurance Benefits, I agree to file a claim for Disability Insurance Benefits with the Social Security Administration and to request a Reconsideration in the event of an initial determination of disallowance. ...
>
> In the event of an award of Primary Disability Insurance Benefits by the Social Security Administration, I, the undersigned, for myself, my heirs, assignees, executors, administrators, or personal representatives hereby assign and voluntarily agree to repay a sum equal to the lesser of the total amount of Primary Disability Insurance Benefits payable to me and the total amount of Sickness and Accident and Extended Disability Benefits paid to me, for the same period. ...
>
> If repayment is not made within thirty days of the date I receive notice of the amount to be repaid, I hereby authorize General Motors and Metropolitan [the plan insurer] to make appropriate deductions from any future compensation or insurance benefits thereafter payable to me in order to accomplish repayment. ...

Plaintiff Smith was determined to be totally and permanently disabled in June of 1996 and began receiving benefits under the Pension Plan. Thereafter, he was awarded disability benefits by the Social Security Administration ("SSA"), receiving a retroactive lump sum payment from the entitlement date of August 1, 1989. Since he had received S&A benefits and

EDB under the Disability Plan during the same period of time covered by the SSA retroactive disability payment, a refund was requested of Smith by the plan administrator. Since Smith failed to repay the overpayment to the plan administrator, GM, on behalf of the Disability Plan, undertook to recover the funds by reducing or denying Smith's disability benefits.

Plaintiff Northcutt's last day of work for GM was December 20, 1996, and he retired effective January 1, 1997. In addition to receiving the basic monthly retirement benefit, Northcutt received an early retirement supplement, pursuant to the provisions of the Pension Plan. In applying for retirement, Plaintiff Northcutt signed an authorization which provided in pertinent part:

> I have read and understand the data shown on Form HRP-11 applicable to my retirement under the General Motors Hourly-Rate Employees Pension Plan. I further understand that:
>
> 1. If I become eligible for a Social Security Disability Insurance Benefit or an unreduced Social Security benefit prior to attaining age 62, I immediately will furnish to the GM Pension Administration Center evidence of the effective date of entitlement to such benefit.
>
> In such case, any temporary benefit I may be receiving will cease to be payable. Any supplement I may be receiving will be reduced in accordance with applicable provisions of the Pension Plan. Such cessation or reduction will be effective as of the first of the month for which I initially become entitled to such Social Security benefit, but not prior to the effective date of my retirement.
>
> Any overpayment of my GM pension benefits resulting from my receipt of such Social Security benefit must be refunded by me in a lump sum. Otherwise, my GM pension benefits will be suspended in accordance with Pension Plan provisions until the total amount suspended equals the total amount of the overpayment.

The Pension Plan, through negotiated supplementation, provides for the return of

overpayments made to pensioners. Following receipt of a retroactive lump sum payment from the SSA, the plan requirements dictate that the pensioner provide the plan's pension administration center with evidence from the SSA establishing the date of the pensioner's disability and the effective date of social security benefits. If an overpayment has been made, that amount must be repaid in a lump sum or through deductions from future monthly benefits until the amount of the overpayment is repaid.

Plaintiff Northcutt was determined to be disabled by the SSA as of November 1, 2000 and on that basis he received a lump-sum payment of retroactive disability benefits from the SSA. On July 17, 2003, Northcutt was advised by the plan administrator that, having received an overpayment in the amount of $32,175.00, because of his receipt of the early retirement supplement benefits during the same period, he was asked to reimburse the Pension Plan the amount of the overpayment. Northcutt failed to repay the pension overpayment, resulting in his benefits being adjusted to enable the Pension Plan to recover that amount.

Both Northcutt and Smith have brought this lawsuit challenging the recoupment provisions of the Pension Plan and Disability Plan, as well as the enforcement agreements they signed, contending that they are contrary to the statutory scheme and policies of ERISA. Plaintiffs maintain that those provisions are unenforceable, seeking repayment of the amounts deducted from their plan payments following their receipt of the retroactive social security benefits.[1] Their theory of recovery derives from the Supreme Court's decision in *Great-West*

---

[1] Defendants argue that an arbitrary and capricious standard of review should apply here, pursuant to *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), because Plaintiffs seek benefits that were denied by a plan administrator or fiduciary to whom was given

*Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).[2]

**II.     The *Great-West* Decision**

In *Great-West*, Janette Knudson was insured under her husband's employer's employee benefits health plan. *Id*. at 207. She had been injured in an auto accident and the plan covered most of her medical expenses, with Great-West Life & Annuity assuming most of those costs. *Id*. The plan contained a reimbursement provision granting it the right to recover from a beneficiary any payment for benefits that the law would allow a beneficiary to recover from a third party. *Id*. A separate agreement assigned the plan's rights to reimbursement to Great West. *Id*. The Knudsons settled the lawsuit they had brought against the manufacturer of the car in which she was riding at the time of the accident and other defendants.

The settlement negotiated between the parties was approved by the state court, after Great-West had unsuccessfully attempted to intervene and remove the matter to federal court. Their agreement allocated only $13,828.70 of a $650,000 settlement to past medical expenses. *Id*. at 207-208. The state court therefore approved a distribution of $13,828.70 from the

---

discretionary authority to determine eligibility for benefits. They maintain that since the plan administrators have been given discretion to interpret the plan and have determined that the benefit payments were to be reduced or suspended until all overpayments were refunded, that decision is due the same deference as a benefit denial review would have received under the arbitrary and capricious standard. However, the issue here is not whether Plaintiffs were entitled to benefits; rather, it is whether a provision of the plan may be enforced. Consequently, the arbitrary and capricious standard of review is not applicable here.

[2]A claim for statutory penalties in connection with his demand for a copy of relevant plan documents has been voluntarily withdrawn by Plaintiff Northcutt.

settlement fund to Great West in satisfaction of its assigned interest in the lien held by the plan on any recovery. *Id*. at 208. The remaining settlement amount, after a $5,000 payment was made to the state for its Medicaid lien, was split between the Knudsons' attorney and a special needs trust set up for Janette Knudson's future medical expenditures. *Id.* at 207-208. Great-West held the check it had received, and sought a temporary retraining order to enforce the reimbursement provision of the plan in order to recoup from the settlement proceeds an amount exceeding $400,000, which was what it had paid out in medical expenses under the benefit plan. *Id*. at 208.

Great-West's lawsuit to enforce the reimbursement provision was filed in federal district court in California. *Id*. The court denied the request for a restraining order, finding that under the plan Great-West was entitled only to the amount received by a beneficiary for past medical treatment, which was the amount that the state court had approved in passing on the settlement agreement, namely, $13,828.70. *Id.* at 208-209. On appeal to the Ninth Circuit, the decision was affirmed, but on different grounds. The Ninth Circuit ruled that § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), limited Great-West to equitable remedies in recovering for alleged breaches of the plan by a beneficiary and its pursuit of a judgment for reimbursement was not equitable relief. *Id.* at 209.

The Supreme Court agreed with the Ninth Circuit. In characterizing the issue presented by the case, Justice Scalia wrote for the majority of the Court as follows:

> The question presented is whether § 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 891, 29 U.S.C. § 1132(a)(3) (1994 ed.), authorizes this action by petitioners to enforce a reimbursement provision of an ERISA plan.

*Id.* at 207.  The specific language from ERISA at issue in *Great-West* is contained in the civil enforcement provisions, as follows:

> **(a) Persons empowered to bring a civil action**
> A civil action may be brought –
>
> ...
>
> **(3)** by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; ....

29 U.S.C. § 1132 (a)(3).

The Supreme Court rejected the arguments based on the character of the relief sought by Great-West, including the argument that their pursuit of an injunction was an equitable remedy allowed by the statute.  *Id*. at 210-211.  Finding that Congress intended the term "equitable relief" to mean less than "all relief" that a common law court may award (including an award of money damages), the Supreme Court followed the path it previously had laid out in *Mertens v. Hewitt Associates,* 508 U.S. 248 (1993), where it held that "equitable relief" in the context of this statute means the types of relief typically available to a court of equity.  *Id.* at 256.  In *Great-West*, the Court found that an action seeking to have a party pay money to another for breach of a contract is quintessentially an action at law, not one at equity.  *Great-West,* 534 U.S. at 210.  Justice Scalia's opinion held that, while an injunction may generally be thought to be an equitable remedy, an injunction such as that being sought by Great-West to force the payment of money due under the provision of a contract, is not a remedy historically available in equity.  *Id.* at 210-211.  According to the Supreme Court, equity would never permit an injunction against failure to pay a simple debt on contract.  *Id.* at 216.  Consequently, § 502(a)(3) of ERISA does

not give rise to an action at law seeking to force the disbursement of settlement monies in such a way as to insure compliance with a contractual obligation. *Id.* at 218.

### III. <u>Application of *Great-West*</u>

Applying this analysis, Plaintiffs ask us here to rule that the reimbursement provision in a benefit plan may not be enforced through the application of benefit reduction or suspension provisions which are also parts of the plan. Specifically, Northcutt and Smith argue that only a remedy which is historically equitable may be sought and the Disability Plan and Pension Plan benefit reduction and suspension provisions are not equitable in nature. While acknowledging that § 502(a)(3) applies only to a situation where a "participant, beneficiary, or fiduciary" brings a civil action, Plaintiffs urge us to extend the analysis of *Great-West* to hold that the enforcement of a reimbursement provision, even if through contractual self help remedies, runs contrary to ERISA policy and the statutory scheme.

Plaintiffs do not limit their argument to the enforceabilty of the benefit reduction and suspension provisions, but maintain as well that a plan may not enforce its reimbursement provision in any manner. This is a particularly weak argument in light of the fact that the *Great-West* decision says nothing about reimbursement provisions in benefit plans. The conclusion in *Great-West* simply directs that a separate action may not be brought by a plan fiduciary to enforce the provision in a manner lacking an historical basis in equity. In fact, the Seventh Circuit has relied on the *Great-West* decision's distinction between equitable and legal restitution in allowing a suit to proceed which sought to impose a constructive trust upon identifiable funds derived from a settlement in order to enforce the reimbursement provisions of

a plan. *Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Varco*, 338 F.3d 680, 687-688 (7th Cir. 2003).  Going back further, the Seventh Circuit has specifically held that a suit to impose a constructive trust upon specific settlement proceeds "nestles comfortably" within ERISA's concept of equity.  *Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000).

Plaintiffs maintain that they long ago spent the overpayment dollars which had been disbursed to them by the plan, so in applying the benefit reduction and suspension provisions, the plan is not pursuing an equitable remedy because there is no identifiable *res* against which the plan may levy.  While this argument holds some initial appeal, it loses traction quickly in light of the fact that the analysis of equitable-versus-legal remedies in *Great-West* was prompted by the plan fiduciary's efforts to "bring a civil action" under § 502(a)(3).  No such attempt is being made here, and nothing in *Great-West* or any other decision known to us suggests that a plan may not enforce its agreed-upon contractual reimbursement provisions through an alteration of performance requirements, as specifically contained in the relevant documents.  In the final analysis, under the parties' agreement when a beneficiary fails to provide reimbursement to the plan, a contingent reduced performance obligation on the part of the benefit plan is triggered.

**IV.     Conclusion**

Plaintiff's lawsuit is premised on a novel interpretation of a recent Supreme Court decision in hopes that it will support their effort to prohibit Defendants from reducing or suspending plan benefits to recoup overpayments.  Plaintiffs' argument fails, however, because the Supreme Court decision is not apt here in that it dealt with a statutory provision which does

not pertain to the facts of this case.  The Court finds no basis on which to conclude that enforcement of the contractual provisions of the Pension Plan and Disability Plan would violate ERISA policy or its statutory scheme.  Accordingly, Defendant's  Motion for Summary Judgment is GRANTED and Plaintiffs' Cross Motion for Summary Judgment is DENIED.

     IT IS SO ORDERED.   10/31/2005

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Kay Rivest Butler
HARDY Smith & PAGE
krb@hardySmith.com

David Matthew Davis
HARDY Smith & PAGE PC
dmd@hardySmith.com

Ronald E. Weldy
ABRAMS & WELDY
weldy@abramsweldy.com